I'm Colby Rowe and I represent the appellant Joseph Boyd and I feel that these students in the courtroom today are going to get another healthy dose of the phrase clearly established. When Forcement Police Officer Boyd and Arkansas Parole Officer Nading entered the motel room of Parolee Lane in January of 2015, it was not clearly established in this circuit that the knock and bounce principle applied to a paroled inmate like Mr. Lane who, as a condition of his release, consented to warrantless searches and seizures. That question or that specific issue is one of first impression for this court and in light of the legal uncertainty underlying it, the officer should be entitled to qualified immunity. Both the U.S. Supreme Court and this circuit have held that the right allegedly violated must be clearly established by controlling authority or a robust consensus of persuasive authority. Is there a robust consensus with the 7th Circuit case and all the other cases that somebody can cite on this? There are about 10 or 12 of them. No, Your Honor. The 7th Circuit case, that's the Green v. Butler case, and I learned a few moments ago the court's desire for cases in circuit, so the 7th Circuit case is the only case that Judge Holmes cited that has facts directly on point with what we have here and I will concede that. But that case alone cannot constitute a robust consensus of persuasive authority. And the 7th Circuit case is problematic in light of the Supreme Court's holding in Sampson. And the U.S. Supreme Court in Sampson dealt with the issue of whether a parolee, a suspicionless search of a parolee's person was reasonable under the Fourth Amendment. Your time is short, so I'll ask you the question on Sampson. The rug to pull out there is footnote 2 that says it was not, the Supreme Court is not concluding that parolees have no Fourth Amendment rights. Yes, Your Honor, and appellants don't make that argument either. What Sampson, my take on Sampson is, Sampson makes it clear that parolees, parole inmates, have a severely diminished expectation of privacy. And the way Sampson got there is the court looked back to the United States v. Knights a few years earlier. Knights was a probation, a case involving a probationer's residence and in Knights there was reasonable suspicion to conduct that search. But the court noted in Knights that by virtue of the probationary status alone, probationers do not possess the same liberty enjoyed by law-abiding citizens. And probationers have significantly diminished expectations of privacy. Now, when the court was analyzing Sampson, the court noted that parolees have even fewer expectations of privacy than probationers because parole is more akin to imprisonment than probation. And the court noted in Sampson that parolees have that diminished expectation, severely diminished, not merely reduced, which in the other balance that the court looked at in Sampson, the court noted the state's overwhelming and substantial interest in the supervision of a parolee for the purposes of reintegration into the community and combating recidivism. And the court noted that those substantial and overwhelming interest justify privacy intrusions that would otherwise be in Sampson, the court noted that Mr. Sampson didn't have an expectation of privacy that society would consider legitimate. And the court concludes that the suspicionless search was reasonable. Now I think once we look at Sampson and in light of Sampson and in considering the Supreme Court's statement in Wilson v. Arkansas in 1995 where the court recognized that law enforcement interest may establish the reasonableness of an unannounced entry, that it cannot be maintained that the contours of the not-to-be-announced principle applied to a parolee search. Now there are several other cases relied on by Judge Holmes from other courts' appeals. Those cases rejected blanket exceptions to the not-to-be-announced principle as it concerned various substantive criminal investigations such as murder investigations, felony drug cases, possession of firearm cases. And importantly, those cases did not involve a parolee with severely diminished expectations of privacy. Let me talk about parolees for a second. When a person is paroled under Arkansas law, do they sign any kind of parole agreement? Do they acknowledge the conditions of parole or anything of that nature, do you know? Yes, Your Honor, they do. There is a conditions of release where it is made explicitly clear that they are subject to warrantless searches and seizure of their person, place of residence, and motor vehicle at any time and not just by parole officers of any law enforcement officer. But it doesn't specifically address the not-to-be-announced issue. That's right, Your Honor. You can be searched for any time, any reason, any place. That is correct, Your Honor. It doesn't impliedly address not-to-be-announced either, right? I would claim it does even impliedly or something. I would concede that as well, Your Honor. I'm running short on time, so I'll just state that under the analysis of qualified immunity, Mr. Lane's right must have been sufficiently clear that the unlawfulness of the officer's actions was beyond debate. And because it was not apparent from the existing case, all I discussed that their actions were unconstitutional, they should be entitled to qualified immunity. Thank you, Your Honor. Thank you, Mr. Rowe. Mr. Cantrell. Thank you, Your Honor. And may it please the Court, Michael Cantrell representing Officer Adam Nading. I've got some points that I would like to make, but I would like to address Your Honor's questions, especially regarding the Seventh Circuit Green cases and the other cases. I think maybe one, I'm not sure if Mr. Rowe and I have a different view on this or not, but at issue here is not any kind of consent. I think Mr. Rowe's correct in pointing out that it's clearly established under Sampson that parolees have severely diminished expectations of privacy by virtue of their parole status alone. So this case is not so much about consent as it is about the appellee's status as a parolee. And under Arkansas law, actually I'm not sure if it's under Arkansas law, but the practice is to have the inmate sign their conditions of release, but that's not a consent. That is for their, it's to show that they understand the conditions that they are under by virtue of their status as a parolee. So there are, it's clearly established that parolees have severely diminished expectations of privacy, and that goes to this Fourth Amendment balancing test where you weigh the expectation of privacy against the state's interest. Your Honor, it, there's this continuum of possible punishments from community service on one end to imprisonment on the other, and the court explained that parolees are on the far intensive end of this continuum. They're right next to prisoners who have no expectation of privacy under Hudson v. Palmer. And the court did recognize that parole is, quote unquote, a variation on imprisonment. So this did lead the court to say in Sampson that the parolee there did not have an expectation of privacy that society would recognize as legitimate. The appellee's really impossible task in this case, I think, is to show a body of relevant case law that does this Fourth Amendment balancing of the expectations of privacy on the one hand against the law enforcement interests of the other, and those cases just don't exist. Well, counsel, what about the general rule that police must have a reasonable suspicion that there'll be violence or evidence will be destroyed? Because the Supreme Court's clearly set that out for a long time that there are just a few of these for knock and announce. Your Honor, I believe that you're referring to the Richards opinion. That was decided in Hudson, but go ahead. Richards was decided in 1997, and that was just two years after Wilson v. Arkansas. Wilson explicitly declined to announce a, quote unquote, comprehensive catalog of circumstances in which knock and announce is required. And, Your Honor, I think it really strains credulity to read Richards as announcing that the Supreme Court had so quickly changed its mind on that point, and that the reference circumstances there constitute an exhaustive list. Yeah, but it has to be circumstances like that, right? Your Honor, I didn't have to clear, clearly what they're saying in Hudson, particularly. The United States Supreme Court is saying in Hudson? Your Honor, I'm not sure. I'm sorry. I can't... Well, it's page 589 to 90 of it. And when you read that, it sounds like they're saying it's got to be things that are really like that. It's really got to be like violence or evidence or something or something. Well, Your Honor, whenever the Supreme Court discusses these cases, they're not going out of their way to talk about every possible circumstance. These are ordinary law-abiding citizens that they're talking about. So the baseline is the ordinary citizen baseline. We're not talking about a... Sometimes we don't know after the knock and announce whether they're ordinary citizens or not. But go ahead. We'll defer that. Well, Your Honor, I think the Supreme Court has said, you referred to the reasonable suspicion standard. The Supreme Court has said that when there are these exigent circumstances, reasonable suspicion is the standard. Samson v. California says, look, not even reasonable suspicion is required in the case of...for searches of parolees. So, and Your Honor, just referring back to Richards, Richards and I believe Hudson as well, just gives no hint that the court is going back on what it said in Wilson to say, okay, now we are giving you a comprehensive catalog of circumstances where no knock is permitted or not permitted. Well, if you read the Eighth Circuit criminal law cases, it sure sounds like there's a very short list. Futility, I haven't mentioned yet, but there's a very short list of times you can do no knock. Well, Your Honor, that's a fair statement. The circumstances have not arisen where we were dealing with a parolee. And again, the circumstances are very different when you're dealing with a parolee. Parolees are under Griffin v. Wisconsin, U.S. Supreme Court case, Griffin v. Wisconsin, a state's operation of a probation system presents special needs beyond normal law enforcement that may justify departures from the usual requirements. So probationers are considered special needs. Well, if probationers are considered special needs, then parolees are certainly considered special needs. That's also the case under Arkansas law as well. Has the Supreme Court been citing the special, you're drifting into the special needs analysis, have they been citing that in these kind of cases? Well, Your Honor, there's not been that many cases. There's Samson. I think the answer is no, that they haven't mixed special needs in with this, to my knowledge. Tell me if I'm wrong. Well, probation is recognized under Griffin as a special needs case. Griffin explicitly refers to it as special needs. Do you know what year Griffin is? I'm putting you to the real test here. What year it is? Yeah, what year is Griffin? It is 1987. Yeah, that's what I thought. Perceived. So, and Your Honor, again, I would just make the point that, actually, I'm close to my rebuttal time. Yes, you are. Right now.  You may. You may. Mr. Hall? Please, the court, counsel. I'm John Wesley Hall from Little Rock. I was appointed to this case by the court after Mr. Lane succeeded in getting past summary judgment or judgment on the pleadings in the district court. The concept of knock-on analysis existed at least in the U.S. since statute in 1917. And Wilson, the issue, which I know well because I argued it, says that is the common law part of the Fourth Amendment? And the answer was yes. The definition of how to apply the exceptions comes later. And the first case was Richards, which I also wrote the brief in. I didn't argue it, but Richards was a motel room. They went to the door and they heard a crash. He went out the back window. He knew the police were there. He was in his underwear. It was 20 below zero outside. It's Madison, Wisconsin. In the middle of the winter. He was running through the snow barefooted in his underwear. But they were waiting for him. But he did go out the window and that authorized the entry because they heard the crash. But let me quote for you from 1958's Miller, which is 60 years ago, not involving the parolee. And what court are you in? Kent Court. Yes, Supreme Court. Go ahead. Every householder, the good and the bad, the guilty and the innocent, is entitled to protection designed to secure the common interest against unlawful invasion of his house. A petitioner should not be unlawfully arrested in his home by officers breaking in without first giving notice of their authority and purpose. The very first case dealing with a parolee was 10 years later, 1968. And that's a Rosales case from California. From that case on, not one case that I could find has gone to the contrary. And I did a Westlaw search. I did a Lexus search. And what do you mean to the contrary counsel? Either holding that there is no right to knock an ounce for a parolee or that there's a qualified immunity. Qualified immunity cases, of course, didn't come along until many years after Rosales. But there is no qualified immunity case that I could find that even says the officer gets a qualified immunity because the law is unsettled. So if every district court case, every state case, what few appellate cases there are, go in one direction, at what point do you say there is not a robust consensus of cases? It is by definition when there's no case to the contrary. Let me ask you about Arkansas, because the Lane case. I know it's 2017. What's the best Arkansas case before Lane that all these Arkansas people should have known about? There really isn't one. Arkansas requires parolees to sign an acknowledgment that they're subject to search. It was memorialized in statute in 2015, but it was after the search. The statute, though, just codified what they had already known, because Arkansas follows the rule that you do not need reasonable suspicion for a parole search. And that's the only difference, that's the only place in the Fourth Amendment where state law matters. If state law says it's no reasonable suspicion is required, then that's how the Fourth Amendment cases go. If reasonable suspicion is required, that's how the Fourth Amendment cases go. I thought you were giving me an 1850 or 1880 case on that. Mr. Wessler. But you said it doesn't exist. Go ahead. It doesn't exist. Okay. Go ahead. Let me ask about the Lane case, just so everybody understands. That's this case. Correct. Mr. Lane got the Arkansas Supreme Court to rule that his rights were violated by the lack of a knock and announce. But it was a four to three decision. And what do we make of the fact that at least three justices of the Arkansas Supreme Court thought that it was not unconstitutional? What's a reasonable police officer to think? Is it so clearly established in the mind of this reasonable police officer that what he was doing was unconstitutional? When three justices of the Arkansas Supreme Court thought it was just fine. So when the U.S. Supreme Court decides a case 5-4, we can ignore it? No, that's the important. When the Arkansas Supreme Court decides it's 4-3? No, we can't. It's binding. Just because three dissented doesn't mean anything, because the next time around they're going to have to follow it, unless they want to dissent again. Because that's what stare decisis is. They say, I dissented in the other case, but I concur now. Well, no, I'm not arguing stare decisis. What I'm saying, though, is that at least three of the justices felt that it was not clearly established by Supreme Court precedent that this was a constitutional violation. I guess, does that have any bearing on our analysis of whether a reasonable officer would have thought there was such a strong consensus that it was clearly established? Well, for what it's worth, Lane didn't have the benefit of me arguing for him if it would have made a difference. But I've been on the winning side and losing side of a lot of 4-3 opinions out of the Arkansas Supreme Court. I don't get to pick and choose which ones I follow. I have to follow the way I lost or won, and that's just how it works. Yes, other judges said, well, we don't find it to be clearly established. Are they thinking ahead to 1983 cases? Remember, Justice Berger, back in the 70s, said we should get rid of the exclusionary rule because it was a 1983 remedy. And then came qualified immunity in the late 70s, which led to the good faith exception in 84, which now leads us to here saying, well, good faith exception applies, so the evidence comes in, and then you lose anyway on 1983 because it's not a settled issue of law. A lot of cases go that way. But the 1983 remedy then is illusory if it was an excuse to get rid of the exclusionary rule. Counsel, another tough question for you. The Green case, do you know how often it's been cited? I haven't shepherdized it to know. There's not that many cases on this, believe it or not. And I started with, I got Le Fay's first edition. I looked it up, went back to it, 1978. And he cites plenty of cases in 1978. Not a lot. Three, four, five, something like that. And then the case law builds. But in his, following all the way through to the fifth edition, no case to the contrary. In my own book, no case to the contrary. And if there is no case to the contrary, how can you say that it's not well settled? Yes, Arkansas hadn't decided it. The Eighth Circuit hadn't decided it. But until the Eighth Circuit gets its first case, is it always unsettled? At some point you've got to say, yes, it is settled. There's a correction on my notes I found. I made a mistake. I think there are a number of judges who would say yes to that question, answer that question, yes, until the Eighth Circuit has decided that it is unsettled. At least unless there are so many other courts out there, particularly circuit courts, that have decided the issue. I think the answer is probably a lot of judges say yes. Well, how many is so many? Probably more than one. They cite a handful. What's a handful? A handful of marbles of maybe ten. Is ten cases enough when it's ten zero? Well, address that question because that is an important question. There are people who believe it has to be the circuit's case. What do you believe on what gives the officer notice of the established law? If we had a situation where the case law was well divided, and I'll use the example of one where I wrote a cert petition and it got nowhere, and it was pre-Olson, Minnesota v. Olson, guest standing. The case law there by my estimate was 40-20, and it was obviously not clearly established. And then Olson was decided saying a guest does have standing. Factually, my client wouldn't have survived under Olson because he didn't have good facts. It was a good reason, but didn't I assert. But I did canvas all the jurisdictions, all the states, all the circuits, and it was 40-20. This is back in the early 80s. So that is clearly not a consensus if it's divided like that. But if your own circuit's got that, the circuit's got to follow its own case law, and then you can take it up to the Supreme Court saying there's a conflict with another state. And that's how Olson actually got cert granted. What I started on was a correction of a misstatement of facts on page 10 of my brief, which I saw last night, that I said there was no gun. There was, in fact, a gun. And it's not evident from the pleadings in the case, but I found it in the abstract in the state Supreme Court's website referring to the suppression hearing. I tried to check out the record and bring it up here, but somebody already had it checked out. But you can get the abstract to Mr. Lane's brief from, yeah, he was the appellant, from Mr. Lane's trial panel, appellate counsel's brief off of Cork and Act in Arkansas. And the abstract talks about how when they got in there and they had to finally handcuff him, they got him out of bed and there was a gun and methamphetamine between him and his girlfriend. So yes, there was a gun, and I misspoke on that. Nothing says romance like a gun and methamphetamine. But the key to exigency is the officer didn't know he had a gun. This started because according to the suppression hearing transcript, which you can get online, go ahead and look at it. If it's public record, go ahead and look at it. He said, we get an email from the motel and I went through the mail and I recognized him as being one of my parolees. And he wasn't away from where he was supposed to be. That's a violation of conditions. He called the officer to come with him, and that's how I ended up at the hotel. It wasn't because they had any particular reason to go get him. It was formulated earlier than 6 a.m. And the time is confusing. Whether the search happened at 6 or 8 is kind of hard to tell. It doesn't really matter. It happened they were both asleep in bed. That's the key. The motel operator unlocked the door with a master device, not a key, but a device designed to overcome the bolt as well so they could get into the room for medical purposes if somebody died inside or was sick or whatever and use it to allow the police in. How specific do you think the list of exceptions to no-knock is? Well, there's only three exceptions. Futility, risk of destruction of evidence, and danger of the officer. That's it. Did you say futility? You said futility first. Right. Futility, there's nobody home. Yeah, yeah, they usually say that. But my point is, has the Supreme Court said it that clearly, counsel? I believe they have. They said it that in various cases leading up to Wilson. But Wilson didn't have to decide the exception. That was, does the common law become part of the Fourth Amendment? The common law that was existed in 1791 doesn't come into the Fourth Amendment. That was the point. Now, let's settle the issue of exigency later and then Richards had exigency. Counsel, does this add anything to the mix in thinking about the state of the law before this Lane case of the Arkansas Supreme Court? And that's the Arkansas statute that says that an inmate, while on parole, is, actually remains in the legal custody of the agency from which he or she was released. Doesn't that kind of separate parolees from the general citizenry enough to cause a problem with this clearly established idea? I get your point, but the answer is no. Because probation and parolees are still entitled to reasonableness. Everybody is entitled to reasonableness under the Fourth Amendment. You cannot get around that. A search has to be reasonable. An entry has to be reasonable. If they did a parole search by blowing his door off with a flashbang device or something like that, when there's no reason to fear that a weapon inside or he's armed or he's engaging in having hostages or something like that, that's unreasonable on its face, probably. But you have to fall back to reasonableness. Instead, how many times by the Supreme Court, at least 50 times, reasonableness is a touchstone of the Fourth Amendment. And that includes probation and parole searches. Probation searches specifically mentions it in Griffin and Samson. It follows up and reaffirms it. Knights reaffirms it in 2001, Samson in 2006. Reasonableness comes along always. Now there may be exceptions in how what is unreasonable and being able to break in without announcement is unreasonable. All they had to do was knock. We don't know anything from the record because we're here on a 12B6 and a 12C motion because the record hadn't been fully developed. Was there a back window? Was there a way out? If there wasn't, then they'd have to worry about escape. They didn't have any reason to believe he had a gun because the issue was he wasn't home where he should have been that night. And then he was there with his girlfriend. And as I mentioned in the footnote in the brief, what happens if he's in bed with his girlfriend, not just asleep but doing something else? Doesn't anybody have a right to at least acknowledge that they're in a motel room alone? What else could they be doing? Let's at least engage in a little civility here. And that's part of reasonableness. Let's knock. That's all they had to do. He could have given that up by signing a condition, even that sort of privacy. I'd say no. Oh, you'd say no. You're with the California courts, right? I'd say you can't waive reasonableness under the Fourth Amendment. That would be an unconstitutional condition. He can waive... That's what the California courts have said, right, Counselor? They're California appellate courts that have said you just can't require that. Go ahead. You can waive notice. You can waive the requirement of reasonable suspicion. Arkansas requires that. But the statute doesn't even mention knock and announce. The statute that was adopted in 2015. But it does say reasonableness. It's written in the statute because it has to. That's just basic fundamental constitutional order. Well, reasonableness comes back to being weighing, too, says the Supreme Court many, many times. Correct. Well, but reasonableness is a floor. How far below the floor can you go? I've got 18 seconds. I'll give it up. I'll cede my time to them. Thank you, Counsel. The rebuttal is by Mr. Cantrell, right? Please proceed. Thank you, Your Honor. And it is... I'll say it is a privilege to argue this case against Mr. Hall, who has written on these matters and is very familiar with it. Mr. Hall did mention that Tigreen is not cited that often. And the reason he gave is that there's not that many cases. And I think that... Do you know how many times he's cited? I do not. We'll find out. Go ahead. But, Your Honor, the plaintiff here does have the burden of making an affirmative showing, of showing a body of relevant case law. And under Westby, District of Columbia, the Westby Supreme Court, an officer is entitled to qualified immunity unless the plaintiff shows that existing law has placed the constitutionality of the officer's conduct beyond debate. We have made the argument that, you know, the Arkansas Supreme Court's sharply divided 4-3 opinion on this point is relevant. To be clear, the argument is not merely that a difference of preclude a law from being clearly established. Rather, the argument that we are making is that the existence of an actual debate concerning the particular officers in this case, whether they violated the Fourth Amendment, shows that the law was not clearly established. That's exactly what... In that case, if our circuit was 6-5, you think something wouldn't be clearly established in our circuit by a 6-5 in-bank decision? Your Honor, I would have to say that a majority opinion clearly establishes the law. Proceed. Your Honor, as far as the Arkansas statute is concerned, I will just note, and my time has expired, but... Can you just finish your sentence? Yes, Your Honor. The statute that was in force at the time of the events underlying this case actually referred to parolees as prisoners. And so the statute that we cited referred to inmates. That was the post-events statute. But just with that correction, Your Honor, we will ask that the court reverse the district court's denial of qualified immunity and remand for dismissal. Thank you, counsel. Cases number 18-2194 and 18-2426 are submitted by decision for the court. Ms. Scans.